UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
ALICE GORDON,

      Plaintiff,

     08 CV 8354 (SAS)

    -against-

     FIRST AMENDED
THE CITY OF NEW YORK, DETECTIVE  COMPLAINT
GREGORY BARRETT (Shield 6674, Tax ID 905758,
 67th Precinct), DETECTIVE CHRISTOPHER HAYES JURY TRIAL DEMANDED
(Shield 5408, 67th Precinct) and DETECTIVE
MATTHEW WALKER (Shield 1701, 67th Precinct),

      Defendants.
--------------------------------------------------------------------------X

   Plaintiff, **ALICE GORDON**, by her attorney, Joel Berger, Esq., for her first amended complaint alleges, upon information and belief, as follows:

### NATURE OF THE ACTION

   1.  This is an action to recover money damages arising out of defendants' violation of plaintiff's rights under the Constitution and laws of the United States and the State of New York, including false arrest, false imprisonment and malicious prosecution by employees of the New York City Police Department (NYPD).

### JURISDICTION AND VENUE

   2.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth , Eighth and Fourteenth Amendments to the Constitution of the United States.

   3.  The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

   4.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b), in that the business residence of defendant City of New York lies within this District.

*PENDENT JURISDICTION*

5.    This Court also has jurisdiction over plaintiff's state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6.    On August 24, 2007, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e.

7.    At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

8.    This action was commenced within one year and ninety days after the happening of the events upon which the claims are based.

*JURY DEMAND*

9.    Plaintiff demands trial by jury in this action.

*PARTIES*

10.    Plaintiff **ALICE GORDON** is a citizen of the United States of America and a resident of the State of New York.

11.    Defendant City of New York is a municipal corporation organized under the laws of the State of New York.   It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers, supervisory police officers and detectives.

12.    At all times relevant herein, defendant Gregory Barrett (shield 6674, Tax ID 905758) was a detective employed by the NYPD, assigned to the 67th Police Precinct in Brooklyn, NY.

13.    At all times relevant herein, defendants Christopher Hayes (shield 5408) and Matthew

2

Walker (Shield 1701) were detectives employed by the NYPD, assigned to the 67th Police Precinct in Brooklyn, NY.

14.    At all times relevant herein, defendants Barrett, Hayes and Walker were acting as agents, servants and employees of defendant City of New York and the NYPD.

15.    At all times relevant herein, all defendants were all acting under color of state law.

*FACTS*

16.    On Wednesday, July 11, 2007, at approximately 7:00 P.M., plaintiff Alice Gordon was in her apartment at 1070 East New York Avenue, # 7F, Brooklyn, NY 11212.  She has lived at that address without incident for approximately thirty years.

17.    Plaintiff was alone in her apartment, and was wearing only nightclothes.

18.    Mrs. Gordon, age 55, suffers from diabetes, a heart condition, gout, swollen feet, obesity and other ailments.

19.    On July 11, 2007, Mrs. Gordon required a wheelchair or walker to get around.  More recently her medical condition has worsened, and she is confined to a wheelchair.

20.    Mrs. Gordon, mother of four and grandmother of four, has never been convicted of any crime or offense, and had never been arrested until the incident that is the subject of this lawsuit.

21.    At approximately 7:00 P.M. on July 11, 2007, defendant Detective Gregory Barrett of the 67th Precinct, accompanied by defendant detectives Hayes and Walker, began banging on plaintiff's door and demanding entry into her apartment.

22.    Barrett, Hayes and Walker are Caucasian.  Plaintiff is African-American.

23.    Plaintiff was extremely frightened.  She even called the Police Department's Internal Affairs Bureau, and spoke with a detective who advised her to open the door.

3

24.   When Mrs. Gordon opened the door, Barrett, Hayes and Walker barged into her apartment with guns drawn and began looking through her apartment.

25.   Having found no one else in the apartment, Barrett then told plaintiff that "I'm going to make you suffer" for not opening the door right away, or words to that effect

26.   Barrett then carried out that threat by arresting plaintiff without probable cause or any justification whatsoever, forcing her to get dressed and transporting her to the 67th Precinct.

27.   Barrett even admitted to plaintiff that his real reason for being at her residence was to arrest one of her sons, who allegedly had been involved in a physical altercation with two agents or employees of her landlord on an earlier date, over the landlord's removal of certain electrical appliances from the roof of the building.  Barrett even showed plaintiff a photograph of the son he was looking for.

28.   Alice Gordon had not been involved in any physical altercation with the landlord's agents or employees.

29.   Being severely disabled, Mrs. Gordon could not possibly have participated in any alleged physical altercation in any manner.

30.   Nonetheless, Barrett took plaintiff to the 67th precinct and kept her in a holding cell there from approximately 7:00 P.M. to 3:00 A.M., a total of approximately 6 hours.

31.   Plaintiff was denied food during these hours of imprisonment, even though she is a diabetic.

32.   Barrett had her photographed and fingerprinted like a common criminal during this period of confinement.

33.   At approximately 3:00 A.M. on Thursday, July 12, 2007, Mrs. Gordon was handed a

4

Desk Appearance Ticket (DAT) requiring her to appear in Brooklyn Criminal Court on August 14, 2007, to answer to a criminal charge of assault in the third degree, a class A misdemeanor.  The DAT bears serial number 237 and arrest number K07661615, and is signed by Detective Barrett.  Mrs. Gordon was then released from custody.

34.     The charge set forth in the DAT is totally spurious, made up by Barrett to cover up his intemperate, illegal treatment of a sick woman.  Mrs. Gordon never assaulted anyone, and it is obvious from her appearance alone that she is physically incapable of assaulting anyone.  As noted above, Barrett even admitted to Mrs. Gordon that he was actually looking to arrest one of her sons for allegedly assaulting the landlord's agents or employees, and decided to arrest Mrs. Gordon instead to "make her suffer" because she wouldn't open her door for him right away.

35.     Barrett's charge was so false that initially he didn't even follow through on it by filing papers with the Criminal Court.  When Ms. Gordon went to Brooklyn Criminal Court on August 14, 2007, as required by the DAT, she was advised by the Clerk's Office that the Court had no record whatsoever of the charge and that there would be an adjournment of 90 days, with the matter to be dismissed in its entirety if paperwork is not filed by then.

36.     Subsequently Barrett covered himself by arranging for a complaint and supporting deposition to be filed, and Mrs. Gordon received a notice by mail requiring her to appear in Criminal Court on September 26, 2007.

37.     Subsequently plaintiff's case was adjourned numerous times, including December 13, 2007, and February 25, April 17, May 19, May 27, June 19, July 16, July 24, September 23, October 6, October 31, and November 7, 2008.

38.     Every one of her appearances in Brooklyn Criminal Court was physically exhausting for Mrs. Gordon, since she is confined to her wheelchair.

39.     The criminal complaint was not sworn to until September 12, 2007.  It is the hearsay complaint of "legal assistant" Nora El-Maadawy of the Brooklyn District Attorney's office, accusing plaintiff of four misdemeanors: assault in the third degree, menacing in the third degree, harassment in the second degree, and criminal possession of a weapon in the fourth degree.

40.     The complaint recites that it is based upon a supporting deposition of someone named Lazie Popack, one of the landlord's agents, employees, or relatives, and on its face it establishes that the real target is not Mrs. Gordon.  It states, in relevant part, that on or about July 2, 2007, at approximately 1:30 P.M., at the location of plaintiff's address, "the defendant *and an unapprehended other* did corner the informant and punch the informant about the face and chest screaming I'm going to kill you *while unapprehended other did hit informant with a pipe*" (emphasis added).

41.     Plaintiff did not commit any of these offenses.  She is physically incapable of cornering or punching anyone.  She was not involved in any verbal altercation with any of the landlord's agents or employees in which she threatened anyone.

42.     Defendants have admitted that the only reason for perpetuating the charges against Ms. Gordon is to seek her cooperation in prosecuting the "unapprehended other" referenced in the complaint, believed by defendants to be one of plaintiff's sons -- whom defendant Barrett has admitted was the real target of his entry into plaintiff's apartment on the night of July 11, 2007.

43.     The continued relentless prosecution of the wheelchair-bound Ms. Gordon was the result of a family relationship or other close relationship between Detective Barrett and/or other NYPD employees at the 67th precinct and the landlord of Mrs. Gordon's building and/or the

6

landlord's employees.   The landlord (DORI Realty, LLC, 438 Kingston Avenue, Brooklyn, NT 11225) wants to pressure Ms. Gordon into leaving her apartment -- she has a very low rent-stabilized rent and a Section 8 subsidy -- and has even offered her $20,000 to leave.       She has refused.

44.     On November 24, 2008, plaintiff was tried in Brooklyn Criminal Court at a bench trial conducted before Hon. Geraldine Pickett, Judge of the Criminal Court.   Detective Barrett testified, as did Lazie Popack and plaintiff.   Summations were postponed until the following week.

45.     Summations were postponed several times because the elevator in plaintiff's building was broken and the landlord delayed fixing it.   Finally, on December 17, 2009, plaintiff was lowered down 7 flights of stairs in her wheelchair and was taken to Brooklyn Criminal Court. Summations were presented, following which plaintiff was promptly acquitted of all four misdemeanor charges.   (According to the transcript, the assault charge had been reduced before trial to "attempted" misdemeanor assault.)

46.     The original complaint filed by Popack with the police on July 2, 2007, did not even mention Mrs. Gordon as a suspect or wanted individual.   It stated "***WANTED: # 1 OF 1***" (emphasis in original) and identified this one and only wanted person as "**GORDON, BEN**" (plaintiff has a son named Benjamin).   It further states that all Ben Gordon was wanted for was misdemeanor assault, for allegedly hitting Popack in the head and allegedly causing injuries to his head.   It specifically reflects that no weapon was involved.

47.     It is undisputed that this complaint lay dormant until July 11, 2007 -- nine days later -- when defendants found it necessary to send three detectives to plaintiff's residence, at night, over a misdemeanor assault complaint not involving any weapon.

48.     At the time the three detectives went to Mrs. Gordon's apartment, there was no NYPD

7

complaint accusing her of any wrongdoing.  She was not a wanted individual.  The only wanted individual -- wanted solely for an alleged misdemeanor assault not involving any weapon, that had allegedly taken place nine days earlier -- was "Ben Gordon."

49.     Defendant Barrett subsequently drafted a "supporting deposition" for Popack -- Barrett conceded at the trial at which Mrs. Gordon was acquitted in Brooklyn Criminal Court that he wrote it -- which departed significantly from the original complaint and became the first document in the record accusing Mrs. Gordon of anything.

50.     The supporting deposition claims that the disabled Mrs. Gordon punched Popack in the chest and face together with her son.  It also states that her son possessed two weapons -- both a firearm and a pipe with a screw attached -- whereas the initial complaint of July 2 stated that no weapons were involved.

51.     The wording of the supporting deposition establishes conclusively that it was written after the arrest of Mrs. Gordon:  it describes Mrs. Gordon's son as an "unapprehended other," *i.e.*, as opposed to Mrs. Gordon, who already had been arrested when Barrett wrote the document.

52.     There is no documentation supporting the claim that Mrs. Gordon was a wanted individual at the time that Barrett, Hayes and Walker went to her home on the night of July 11, 2007. The supporting deposition was written after Mrs. Gordon's arrest, in an effort to justify her arrest after-the-fact.

53.     Although dated July 11, 2007, the supporting deposition was in all likelihood written at a later date, which would explain why there were no charges ready when plaintiff appeared in Criminal Court on the August 14 date written by Barrett on the Desk Appearance Ticket.

54.     Popack admitted at Mrs. Gordon's trial that, contrary to the statements of the

8

supporting deposition written by Barrett, and the Criminal Court complaint of September 12, 2007, based upon the supporting deposition, he was "barely hurt" in whatever incident took place on July 2, 2007, and sought no medical attention.

55.     This is not a simple case of a policeman taking down a complaint from a civilian and following through on it.  Barrett first went far beyond the initial complaint by arresting plaintiff, and then played a key role in manufacturing a document after-the-fact in a belated effort to justify his treatment of Mrs. Gordon.

## FIRST CLAIM FOR RELIEF

56.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-55.

57.     Defendants, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 8, 11 and 12 of the Constitution of the State of New York.

## SECOND CLAIM FOR RELIEF

58.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-55 and 57.

59.     Upon information and belief, the acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police supervisors, detectives and officers.

60.     Upon information and belief, the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police supervisors, detectives and officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

61.     The official policies, practices and customs of the City of New York and the NYPD,

alleged in ¶¶ 1-34 and 38-39 violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 8, 11 and 12 of the Constitution of the State of New York.

### *THIRD CLAIM FOR RELIEF*

62.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-55, 57 and 59-61.

63.     The conduct toward plaintiff alleged herein constituted false arrest, false imprisonment, malicious prosecution, assault, battery, the intentional, willful and malicious infliction of severe physical, mental and emotional distress, and employee negligence.

64.     The conduct toward plaintiff alleged herein subjected her to trauma, shock, debasement, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering, and loss of employment.

### *FOURTH CLAIM FOR RELIEF*

65.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-55, 57, 59-61, and 63-64.

66.     At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 8, 11 and 12 of the Constitution of the State of New York.

### *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a)     Compensatory damages against all defendants, jointly and severally;

(b)     Punitive damages against all individual defendants, jointly and severally;

(c)     Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d)     Such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         February 27, 2008

                                      /s/ JOEL BERGER
                                      **JOEL BERGER (JB-3269)**
                                      360 Lexington Avenue, 16th Fl.
                                      New York, New York 10017
                                      (212) 687-4911

                                      **ATTORNEY FOR PLAINTIFF
                                      ALICE GORDON**